480 F.2d 498
 W. G. COSBY TRANSFER & STORAGE CORPORATION, Appellee,
v.
Robert F. FROEHLKE, Secretary of the Army, and Major General
Clarence J. Lang, Military Traffic Management and
Terminal Service, Appellants.
 No. 72-2465.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 3, 1973.
Decided June 13, 1973.
 
 Joseph B. Scott, Atty., U. S. Dept. of Justice (Harlington Wood, Jr., Asst. Atty. Gen., of the U. S., Brian P. Gettings, U. S. Atty., for the E. D. Virginia, and Walter H. Fleischer, Atty., Dept. of Justice, on brief), for appellants.
 Alan F. Wohlstetter, Washington, D. C. (Stanley I. Goldman, Denning & Wohlstetter, Washington, D. C., W. Kendall Lipscomb, Jr., Taylor, Hazen, Bryant & Kauffman, Richmond, Va., on brief), for appellee.
 Before HAYNSWORTH, Chief Judge, and BUTZNER and FIELD, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 The Secretary of the Army and the Commander of the Military Traffic Management and Terminal Service (the Service) appeal from an order of the district court that enjoins them from enforcing the Service's "four-carrier" regulation against W. G. Cosby Transfer and Storage Corporation without first holding a hearing to determine whether Cosby is entitled to an exemption from the regulation. We affirm.
 
 
 2
 The Service is the defense agency in charge of moving furniture and other personal property for members of the uniformed services.[1] To carry out its responsibilities, it has adopted a comprehensive set of regulations that govern all aspects of packing, storing, and shipping household goods, both here and abroad. For international shipments, the regulations authorize a single contract between the government and an international carrier that has been approved by the Service. The carriers generally subcontract with one or more local moving companies which act as their agents for packing and storage at the point of origin or destination.
 
 
 3
 Formerly, a local moving company could represent any number of carriers, but in 1971 the service amended its regulations to restrict a local agent's representation to four carriers.[2] The regulation authorizes the commander to exempt agents from the four carrier restriction in certain situations:
 
 
 4
 "The Commander . . . may . . . grant an exception . . . when such an exemption would not be inconsistent with the Program's effective management and when the agent has the capability to represent a greater number of carriers during all periods. . . . Requests for exception to carrier limitations will be initiated by an [installation transportation officer] and only when the restrictions on carrier representation result in inadequate service to his installation."[3]
 
 
 5
 In recent years, a major portion of Cosby's business has involved local representation of carriers that are making international shipments of household goods for the Service. Since initially qualifying as an approved agent for international carriers in 1962, Cosby has represented as many as 15 carriers at one time, and the company represented 11 when the Service announced the four-carrier limitation. Over the years, Cosby has upgraded its facilities to accommodate its carriers and the Service. Its present investment totals approximately $200,000 and includes five pieces of motor vehicle equipment that were specially purchased for international shipments to and from Fort Lee, Virginia.
 
 
 6
 Shortly after the Service announced the four-carrier rule, Cosby applied for an exemption. Although the company had met all of its inspection standards and had transacted its business satisfactorily while representing more than four carriers, the commander summarily denied the request for an exemption. The only reason given for the rejection was that carrier service at Fort Lee was adequate. When Cosby failed to designate the four carriers it wanted to represent, the Service threatened to stop all tenders of international shipments to the company. Cosby then filed suit in the district court and obtained the injunction which the government attacks on this appeal.[4]
 
 
 7
 * The district court found that limiting Cosby's representation to four carriers would cause the company economic harm. Accepting this finding, the government does not contest Cosby's standing to sue. Cf. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The government, however, contends that the restriction placed on Cosby is not subject to judicial review because the imposition of the four-carrier limitation was a management decision. While it concedes denial of Cosby's request for an exemption was final agency action within the meaning of the Administrative Procedure Act,[5] it asserts that the denial cannot be reviewed because it constituted a decision that was "committed to agency discretion by law."[6]
 
 
 8
 The Supreme Court has recently emphasized that the statutory exception from judicial review of administrative action that is committed to agency discretion should be narrowly applied. It is appropriate only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply'." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971). The commander's decision to deny Cosby's request for an exemption does not fall within this limited exception. The Service, like any other government agency, is required to follow its own regulations. Brooks v. Clifford, 409 F.2d 700, 706 (4th Cir. 1969). The Service's regulation itself provides the applicable law for judicial review of the agency action because it carefully defines the limits of the commander's discretion in ruling on requests for exemption.
 
 
 9
 The government contends that the regulation allows only a transportation officer to initiate the request for an exemption and that it permits him to act only when the restriction results in inadequate service. This interpretation, however, is contrary to the Service's procedure for processing requests. The record discloses that Cosby and some two hundred other agents sought exemptions. All were denied, but in no instance was the denial based on the failure of the transportation officer to initiate the request. Therefore, in accordance with the administrative practice, we interpret the regulation to allow agents to initiate requests for exemptions.
 
 
 10
 We construe the regulation to provide that the commander should grant an agent's application when (1) the exemption is consistent with the program's effective management and (2) the agent is able to represent more than four carriers satisfactorily. The regulation does not allow the commander unfettered discretion to grant or withhold an exemption even though it provides that he "may . . . grant" an exemption. The use of the verb "may" does not permit the commander to act arbitrarily. Cf. Mulloy v. United States, 398 U.S. 410, 415, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970); Thompson v. Clifford, 132 U.S.App.D.C. 351, 408 F.2d 154, 158 (1968). His decision must accord with the criteria set forth in the regulation. Brooks v. Clifford, 409 F.2d 700, 706 (4th Cir. 1969).
 
 
 11
 The regulation also authorizes transportation officers to initiate requests for exemptions. But this can be done only when the four-carrier restriction results in inadequate service at the officer's installation. This severe limitation on a transportation officer's discretion does not limit the commander's authority to grant an agent's application when the agent satisfies the regulation's criteria for an exemption. Instead, the limitation prohibits a transportation officer from favoring local agents when there is already adequate service at his installation.
 
 
 12
 We conclude, therefore, that (1) an agent may apply for an exemption; (2) the commander may not arbitrarily grant or deny the request; (3) although service at an installation is adequate, the commander should grant an agent's application when the exemption is consistent with the program's effective management and the agent has the facilities to represent more than four carriers satisfactorily; and (4) the commander's decision is subject to judicial review. Cf. Littell v. Morton, 445 F.2d 1207, 1210 (4th Cir. 1971).
 
 II
 
 13
 The officer charged with administering the program testified that the Service imposed the carrier restrictions because it found that overcommitted agents often had to refuse tendered shipments and that agents would select from a number of tenders only those shipments they desired to handle. He explained that limiting the number of carriers an agent can represent reduces the incentive to refuse shipments. Abuses of this type, of course, would afford grounds for denying an exemption. But the record does not disclose that Cosby has ever engaged in the practices that the regulation is designed to prevent. Therefore, the commander did not attempt to justify his denial of Cosby's request on either of the grounds recognized by the regulation-inconsistency with effective management or inability to represent more than four carriers.
 
 
 14
 Cosby is not barred from relief because it contracted with the carriers it represents and not directly with the government. The regulations require the Service's approval before an agency may represent a carrier.[7] Moreover, though representing a carrier, the local agent performs an indispensable part of the Service's mission. As a practical matter, the agent does business with the government and should receive the procedural protection afforded government contractors. One performing government work need not always show a contractual relationship with the government to secure freedom from arbitrary official action. Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).
 
 
 15
 Before debarring a contractor from future government contracts, a federal agency must comply with Sec. 3(a) of the Administrative Procedure Act by stating and publishing its rules of procedure.[8] Gonzalez v. Freeman, 118 U.S.App.D.C. 180, 334 F.2d 570, 577 (1964); cf. Overseas Media Corp. v. McNamara, 128 U.S.App.D.C. 48, 385 F.2d 308 (1967). Both debarment and exemption proceedings involve examining the qualifications of a business to perform work for the government satisfactorily. In both instances the issues are essentially factual. No broad policy or management questions are now at stake. The Service resolved them by adopting the regulation restricting the number of carriers an agent can represent and by making provision for exemptions.[9] The issues before the commander are limited. He must determine whether Cosby is able to perform its duties competently while representing more than four carriers and whether granting Cosby an exemption would prejudice the efficient management of the program.
 
 
 
 * * *
 Section 3(a) of the Administrative Procedure Act requires the commander to follow published procedures in making his decision. Establishment of these procedures is the Service's responsibility, and the district court properly refrained from promulgating them. The procedures should at least include a method for filing exemption requests, an opportunity to present evidence in support of the request and to rebut evidence against it, and, finally, a decision that is based on the administrative record. Because the Service's regulations and the Administrative Procedure Act afford Cosby adequate relief, we need not consider its constitutional claims.
 The district court properly declined to adjudicate the merits of Cosby's application. Instead, the court enjoined enforcement of the four-carrier restriction against Cosby until the Service granted the company a hearing at which it could prove that it merited an exemption. Determination of Cosby's entitlement to an exemption under the regulation should be made in the first instance by the Service in accordance with the Administrative Procedure Act. The Service's failure to state and publish its procedures justified the district court's conditional injunctive relief. Cf. Gonzalez v. Freeman, 118 U.S.App.D.C. 180, 334 F.2d 570, 579 (1964).
 Affirmed.
 
 
 [1]
 Federal law entitles a transferred member of a uniformed service "to transportation (including packing, crating, drayage, temporary storage, and unpacking) of baggage and household effects" at government expense. 37 U.S.C. Sec. 406(b) (1970). Defense department regulations designate the Service, an Army command, as "[t]he single manager operating agency for military traffic, land transportation, and common-user ocean terminals" for all of the military services. 32 C.F.R. Sec. 173.3(f) (1972)
 
 
 [2]
 The regulation provides:
 "For household goods, including unaccompanied baggage, or originating in the U.S. and destined overseas, only four carriers may be represented in an origin area by the same local agent. If an agent represents himself as a carrier, such agent may only represent three other carriers." Department of Defense, Personal Property Traffic Management Regulation Sec. 6002(d)(8)(b) [32 C.F.R. Secs. 173.4(b)(5)(ii)].
 
 
 [3]
 Department of Defense, Personal Property Traffic Management Regulation Sec. 6002(d)(8)(f) [32 C.F.R. Sec. 173.4(b)(5) (vi) (1972)]
 
 
 [4]
 In its opinion from the bench, the district court said "unless and until the plaintiff gets a hearing regarding his exception, the defendants are enjoined" from enforcing the four-carrier restriction against him, and the docket sheet records that an injunction was entered as of 2:50 p. m. However, no separate document, except for the unsigned transcription of the court's oral opinion, sets forth the judgment. Under other circumstances, this deviation from Rule 58 of the Federal Rules of Civil Procedure might cause serious problems. See e. g., Superior Life Insurance Co. v. United States, 462 F.2d 945 (4th Cir. 1972). But since both parties have treated the order as validily entered, we have considered the merits of the appeal
 
 
 [5]
 Section 10(c) of the Administrative Procedure Act [5 U.S.C. Sec. 704 (1970)] provides, ". . . final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." Agency action is defined by Sec. 2(13) of the Act [5 U.S.C. Sec. 551(13) (1970)] as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."
 
 
 [6]
 Section 10 of the Administrative Procedure Act [5 U.S.C. Sec. 701 (1970)] provides that judicial review is not available when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." The government does not suggest that any statute precludes judicial review
 
 
 [7]
 Department of Defense, Personal Property Traffic Management Regulation Secs. 6001(d) (2)-(6)
 
 
 [8]
 Section 3(a) of the Administrative Procedure Act [5 U.S.C. Sec. 552(a) (1970)] provides:
 "(a) Each agency shall make available to the public information as follows:
 (1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public-
 (B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;
 (C) rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations. . . ."
 
 
 [9]
 Lack of policy and management questions distinguish this case from Panama Canal Co. v. Grace Lines, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958) and Curran v. Laird, 136 U.S.App.D.C. 280, 420 F.2d 122 (1969), on which the government relies. In both of those cases the courts held that the administrative decisions were immune from judicial review because they had been committed to agency discretion. However, in both, broad public policies were challenged-not an individual's entitlement to a regulatory exemption from the general policy. In Panama Canal, the litigants questioned the computation of tolls for the Panama Canal. Similarly, Curran sought review of the Secretary of Defense's policy to use foreign flag ships rather than mothballed American vessels