**William C. ONWEILER, Plaintiff,**

v.

**The UNITED STATES of America, the Veterans Administration, an Independent Public Agency of the United States of America, Richard L. Roudebush, Administrator of the Veterans Administration, and H. L. Kuyper, Individually and in his official capacity as Director of the Regional Office of the Veterans Administration, Boise, Idaho, Defendants.**

**Civ. No. 1–76–156.**

United States District Court,
D. Idaho.

May 25, 1977.

Richard A. Skinner of Skinner, McClelland & Donnelly, Boise, Idaho, for plaintiff.

Paul L. Westberg, U. S. Atty., Gary Montgomery, Asst. U. S. Atty., D. Idaho, Boise, Idaho, Dennis G. Linder, Raymond M. Larizza, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OF OPINION AND ORDER

FRED M. TAYLOR, District Judge.

This matter is before the court on the motion of plaintiff for partial summary judgment, filed December 13, 1976, and the cross-motion of defendants for summary judgment, filed February 1, 1977.

The material facts in the record, upon which each of the motions is based, are undisputed. In April, 1971, plaintiff Onweiler, an elected member of the Idaho State Legislature, was approved by defendants as a fee appraiser for the Veterans Administration (VA) and was placed on the fee appraiser roster for the State of Idaho Regional Office of the Veterans Administration at Boise, Idaho. On May 12, 1976, after five years of "highly satisfactory" service as such an appraiser while an Idaho Legislator, plaintiff was denied further assignments by the Regional Director of the VA for the reason that there was a "possibility of conflict of interest" because of plaintiff's position as an Idaho Legislator.

The Director's letter suspending plaintiff from further assignments did not indicate or specify how or in what manner a conflict might arise, and plaintiff was not afforded an opportunity to be heard in regard to the possibility of a conflict of interest. On June 10, 1976, plaintiff's counsel demanded in writing that plaintiff be reinstated, that he be compensated for loss of fees, and that he be supplied copies of VA records pertinent to plaintiff's performance and suspension, but no request was made for a hearing. On November 26, 1976, subsequent to the filing of this action and four days prior to the time plaintiff's term of office as a legislator expired, plaintiff was reinstated as an active VA fee appraiser.

In this action, plaintiff primarily seeks compensation for the fees he lost during the time he was suspended, various equitable remedies, including an injunction against prospective removal and further "harassment", and a declaration that defendants' conduct was unconstitutional. Plaintiff claims damages of at least $5,000.00 and has limited his claim to a sum not exceeding $10,000.00. The question of damages is not an issue at this time.

This court has jurisdiction under 28 U.S.C. § 1346.

The critical question here is whether the Regional Director of the VA had the authority to suspend plaintiff without a hearing to determine whether there might be a conflict of interests.

It is agreed that the Regional Director acted, at the time he suspended plaintiff, pursuant to Circular 25-66-6 which provides in ¶ 6(a)(2) as follows:

". . . Also, a designation shall not be made in those cases where the applicant holds an appointive or elective position or any other employment which may result in a conflict of interests between such position or employment and performance as a fee person with the VA, or where embarrassment, adverse public relations, or adverse publicity concerning the applicant or the VA might be expected to result."

Defendants interpret this section of the circular as authorizing blanket exclusion or suspension of appointed or elected officials as appraisers. It is true that an agency's construction of its own regulations controls unless plainly erroneous or inconsistent with the pertinent legislation.

*Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). In the opinion of this court, the VA's interpretation is plainly erroneous.

■ A reasonable interpretation of the section is that an appointive or elected official shall *not* be designated as a fee appraiser if his position *may* result in a conflict of interests between such appointive or elective position and his performance as a fee person with the VA. It seems clear that only those appointed or elected officials that hold positions which *may* result in a conflict of interests are ineligible for designation as a fee appraiser. Whether the holding of such a position may result in a conflict of interests presents a factual question. It should also be noted that the quoted section seems to apply to the original designation of an appraiser and does not refer to suspension subsequent to designation. Here the plaintiff was designated and served for a period of five years while an Idaho Legislator before being summarily suspended only because he was serving in the legislature.

■ Circular 25–66–6, relied on by defendants, has not been published in the Federal Register. Defendants assert that the circular is an interpretation of 38 CFR § 36.4341. Although interpretive regulations may be issued without following rulemaking procedures, 5 U.S.C. § 552(a)(1)(D) requires publication in the Federal Register of "statements of general policy or interpretations of general applicability". Defendants contend that the circular is exempt from the publication requirement under 5 U.S.C. § 552(b)(2) which says:

"(b) This section does not apply to matters that are—

\* \* \* \* \* \*

(2) related solely to the internal personnel rules and practices of an agency."

This exemption has been narrowly construed. *Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 1602, 48 L.Ed.2d 11 (1976) (case summaries of ethical hearings at Air Force Academy were discloseable because they had "substantial potential for public interest outside government"); *Vaughn v. Rosen,* 173 U.S.App.D.C. 187, 523 F.2d 1136, 1143 (1975) (exemption limited to housekeeping duties); *Hawkes v. Internal Revenue Service,* 467 F.2d 787, 796–97 (6th Cir. 1972) (exemption directed to "conditions of employment", such as sick leave and parking facilities). But see *Hicks v. Freeman,* 397 F.2d 193 (4th Cir. 1968) (reduction in force directive within exemption). Circular 25–66–6 delineates the qualifications for designation as a fee appraiser. If the exemption applied, the circular would be unavailable even upon request of potential applicants. The purpose of the statute is to reduce administrative burdens in an ongoing employer-employee relationship. *Benson v. General Services Administration,* 289 F.Supp. 590 (W.D.Washington 1968). Designated fee appraisers are not employees. Furthermore, the circular governs the criteria for the designation of appraisers, not the details of managing a work force. The exemption is inapplicable.

The effect of non-publication is simple: "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." 5 U.S.C. § 552(a)(1)(E).

Failure to publish denies to the fee appraiser applicant knowledge of the standards for designation. Publication is the communicative link between government and persons affected by government action, and disregard of a publication requirement should not be taken lightly. *Gonzalez v. Freeman,* 118 U.S.App.D.C. 180, 334 F.2d 570, 578 (1964); see *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974) (ad hoc decisions based on unpublished regulations are inherently arbitrary).

■ Even if the circular does not adversely affect plaintiff, the Regional Director has notice of it and must be bound by its terms. Under the circular, suspension is proper only where a conflict *may* result. Although an actual, existing conflict may be unnecessary, a factual determination

that conflict is reasonably possible is apparently required. It could be argued that such predictions are non-factual, but it is more reasonable to assume that the prediction depends on existing relationships which must be factually demonstrated. Admittedly, legislative facts will play a major role in the prediction, but the importance of adjudicative facts is underscored by the Administrator's implied rejection of a blanket exclusion. For example, in *W. G. Cosby Transfer & Storage Corp. v. Froehlke,* 480 F.2d 498 (4th Cir. 1973), the government argued that an exemption from an agency regulation, which prohibited approved government shipping agents from representing more than four carriers, should be denied because such agents often refused shipments. But the court ordered a hearing because there was no evidence plaintiff had ever refused shipments. Similarly, the circular here requires that a factual determination be made. This conclusion, though it does burden the Regional Director, does not restrict his decision severely because a predictive determination is easily sustained.

▮ Plaintiff contends that he was denied equal protection of law in violation of the Fifth Amendment because at least one appointed official remained on the roster. Equal protection is denied when: (1) Different treatment occurs; and (2) there is no rational basis for it, or the class drawn is suspect (e. g., race, religion) and no compelling state interest supports the classification. *Davis v. Georgia State Board of Education,* 408 F.2d 1014 (5th Cir. 1969). Defendants admit different treatment. Since a suspect class is not alleged, plaintiff must show the different treatment was arbitrary. The Regional Director may have rationally concluded that the other official(s) faced no immediate conflict of interest. Even if the circular were a blanket exclusion, selective enforcement of the regulation would be permissible absent bad faith or discriminatory intent, neither of which plaintiff has alleged. *Woodbury v. McKinnon,* 447 F.2d 839, 845–46 (5th Cir. 1971); see *Herzbrun v. Milwaukee County,* 504 F.2d 1189 (7th Cir. 1974) (permissible to fire one employee while suspending others for the same conduct).

▮ Plaintiff also contends the circular's exclusion is overbroad, and the Regional Director's action curtailed his First Amendment rights. As the court construes the circular, supra, it is narrowly drawn to ferret out potential conflicts of interest. Even a blanket exclusion would be valid because of the government's compelling interest in avoiding the appearance of a conflict. *United States Civil Service Comm. v. National Association of Letter Carriers,* 413 U.S. 548, 567, 93 S.Ct. 2880, 2891, 37 L.Ed.2d 796 (1973) (Hatch Act's curtailment of government employees' election activities is constitutional).

Plaintiff has not claimed discrimination on the basis of belief, which is basic to the cases he cites. A less restrictive alternative is suggested by plaintiff, i. e., review of each assignment to identify potential conflicts. Plaintiff's alternative would increase the administrative burden and create a potential for abuse in the assignment process. In *Letter Carriers,* supra, the Supreme Court was satisfied that the balance struck between the competing interests, similar to the one struck here, was reasonable. 413 U.S. at 564, 93 S.Ct. at 2890. Thus, the court finds that plaintiff's equal protection and First Amendment arguments must be rejected.

▮ The Administrator has inherent power to dismiss fee appraisers. *Gonzalez v. Freeman,* 334 F.2d at 577; see *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974); *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). Furthermore, Congress has granted the Administrator the authority to contract for services and make all necessary rules and regulations. 38 U.S.C. § 213, § 210(c)(1). Seemingly, this would include the power to approve and dismiss fee appraisers. The issue is, however, how dismissal must be effected.

Title 5 U.S.C. § 552(a)(1)(B) states:

"(1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

\*　　\*　　\*　　\*　　\*　　\*

(B) statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available."

The Administrator has failed to promulgate or publish regulations governing the procedures for dismissal of fee appraisers, despite the statute's command of publication of "all formal and informal procedures available". In *Cosby Transfer,* supra, plaintiff sought exemption from a rule prohibiting shipping agents from representing more than four carriers. The regulations provided that an exemption may be granted if: (1) The agent could still supply satisfactory service; and (2) the efficiency of the service would be promoted. The court held that the Service must formulate and publish rules of procedure to govern award of an exemption. Id. at 503. The court noted that qualifications to do business imply factual issues and ordered the agency to determine whether the two criteria were met in a procedure which afforded plaintiff an opportunity to present and rebut evidence.

Neither plaintiff nor defendants has confronted this question, yet the requirement of the statute appears clear. Requiring formulation and publication of procedures to govern dismissal of fee appraisers, and by implication many other contractors, may burden the Administrator unduly, yet this consequence did not deter the court in *Cosby Transfer,* supra, and the statute does not authorize exceptions. By formulating procedures to cover groups of similarly situated persons, the Administrator could reduce the burden to a tolerable level.

Defendants could argue that summary dismissal was permissible; thus, no "procedures [were] available", and the publication requirement is inapplicable. The court finds this argument unconvincing. If summary dismissal is proper, the Administrator should indicate who is without procedural rights. This would further the purpose of § 552 by informing affected parties of their rights, and the administrative burden would be de minimis. Although summary judgment for plaintiff on this ground is support-able, there is more authority for ruling in plaintiff's favor on other grounds.

 Although the Regional Director may have had inherent authority to dismiss, summary dismissal was not explicitly authorized. Where government action seriously injures an individual, authority for summary adjudication of factual issues will not be inferred. *Greene v. McElroy,* supra. In *Greene,* the Secretary of Navy revoked plaintiff's security clearance without traditional procedural safeguards. Plaintiff was an engineer employed by a defense contractor. The issue framed by the court was not whether the President or Congress could authorize summary dismissal, but whether such authority had been delegated to the Department of Defense. The court held that such authority must be expressly delegated. The court pointed out that traditionally procedural safeguards are required and, therefore, the President and Congress would assume that normal procedures would be followed. The court's conclusion is buttressed by current practice—administrative agencies usually establish methods of procedure which ensure fairness. The court also expressed concern that the task of determining what procedures are warranted, when serious constitutional problems are involved, should not be delegated to administrators. Other cases have expressed similar concern.

In *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), which upheld the summary revocation of a military installation cook's security clearance, the court, before addressing the constitutional issue, specifically found that the President approved Navy regulations sanctioning summary revocation. *Gonzalez v. Freeman,* supra, is also in point. In *Gonzalez,* plaintiffs were debarred from contracting with Commodity Credit Corporation without a hearing. The court held that the power to debar was inherent in the statutory scheme, but that summary debarment was invalid absent Congressional authorization. Cf. *Gutknecht v. United States,* 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

It appears that *Greene v. McElroy,* supra, and *Gonzalez v. Freeman,* supra, dictate that plaintiff's motion for partial summary judgment should be granted. It may be argued that under *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), fee appraisers have no right to procedural protection. But *Roth's* applicability to plaintiff's status is unclear; consequently, the VA itself should not determine what procedures are constitutionally required.

 If defendants' actions deprived plaintiff of liberty or property, due process would require notice and an opportunity to be heard. But a long line of authority establishes plaintiff's right to these procedural safeguards, even without a determination that his interest rose to the level of liberty or property. Persons whose employment in the private sector depends on government approval have often not been required to show that their interest in continued approval constitutes liberty or property. Although *Roth* may cast doubt on these decisions, they have been followed since *Roth* was decided in 1972.

In *Feinberg v. Federal Deposit Insurance Corp.,* 173 U.S.App.D.C. 120, 522 F.2d 1335 (1975), the FDIC suspended plaintiff from his position as a bank president. The court said that plaintiff should be allowed a hearing, absent a compelling governmental interest. In *Cross v. United States,* 512 F.2d 1212 (4th Cir. 1975) (en banc), a rural grocer was suspended from participation in the Food Stamp Act. Suspension injured plaintiff's business severely by reducing his ability to sell to the poor. The court held that, though participation is a privilege, due process required a hearing. Id. at 1217. Factually, *Cross* is similar to the instant case. In both cases, continued government approval was the issue, and state action had only lessened plaintiff's profit potential.

In *Hornsby v. Allen,* 326 F.2d 605, 608 (5th Cir. 1964), the court held that an applicant for a retail liquor license must be afforded procedural due process because licensing is an adjudicatory process. Most cases, however, find that due process attaches only to suspension or non-renewal, not initial denial.

 The Supreme Court has held that when an important interest is adjudicated—either a right or privilege—due process attaches. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) (suspension of driver's license). In *Woodbury v. McKinnon,* 447 F.2d 839, 842 (5th Cir. 1971), the court stated that a doctor, once having been granted surgical privileges, could not be denied continued privileges without a hearing. Even in *Cafeteria & Restaurant Workers,* supra, the court stated that revocation of the cook's security clearance must be consonant with due process, though the court upheld summary revocation because the government's compelling interest outweighed the minor injury to plaintiff. *Horne Brothers v. Laird,* 150 U.S.App.D.C. 177, 463 F.2d 1268 (1972), holds that a contractor suspended from bidding on government projects for 18 months must be afforded a hearing.

 Other cases cased on analogous facts have found a property or liberty interest. E. g., *Case v. Weinberger,* 523 F.2d 602 (2nd Cir. 1975) (nursing home had property interest in expectation of continued certification as provider for Medic-aid patients); *Parker v. Lester,* 227 F.2d 708 (9th Cir. 1955) (denial of security clearance for seamen severely curtailed their employment potential and must comply with due process). This court believes plaintiff's interest in continued approval was protectable, based on the following considerations: The circular constrained the Regional Director's discretion and created a factual question; the circular sets out specific qualifications for designation, although it does not explicitly state that all qualified persons are to be approved; plaintiff was on the active roster for five years and performed well; suspension severely restricted plaintiff's employment in the private sector; suspension curtailed plaintiff's First Amendment activities; and no compelling government interest justified summary dismissal.

Accordingly, pursuant to the partial summary judgment motion of plaintiff, it is ORDERED that plaintiff have a judgment declaring that defendant H. L. Kuyper, Regional Director of the Veterans Administration at Boise, Idaho, had no authority to suspend plaintiff as an appraiser without first affording plaintiff an opportunity to be heard and thereafter making a factual determination as to whether a conflict of interests might result if plaintiff continued as an appraiser for the Veterans Administration.

It is further ORDERED that defendants' motion for summary judgment be, and the same hereby is, DENIED.

Counsel for plaintiff shall prepare a proposed judgment, serve a copy of the same on counsel for defendants and submit the original to the court for approval.