Gladys CAPERTON as representative of a class of property owners having more than $10,000 damage living in Buchanan County, Virginia, in the areas adjacent to the Beatrice & Virginia Pocahontas Shaft Mines Numbers 1–5 which damage is alleged to exist and have been caused by the mining operations of the defendants, Appellant,

v.

BEATRICE POCAHONTAS COAL COMPANY and/or Virginia Pocahontas Coal Company and/or Island Creek Coal Company, Jones & Laughlin Steel Company, Republic Steel Corporation, Appellees.

Harold T. POWERS and Kathy Jo Powers, his wife, Appellants,

v.

BEATRICE POCAHONTAS COMPANY, Jones & Laughlin Steel Company, Republic Steel Corporation, Appellees.

Harry FERRELL and Florene P. Ferrell, Appellants,

v.

BEATRICE POCAHONTAS COMPANY and/or Virginia Pocahontas Company, and/or Island Creek Coal Company, Jones & Laughlin Steel Company, Republic Steel Corporation, Appellees.

Ira Cunningham MUTTER, Appellant,

v.

BEATRICE POCAHONTAS COMPANY and/or Virginia Pocahontas Company and/or Island Creek Coal Company, Jones & Laughlin Steel Company, Republic Steel Corporation, Appellees.

Nos. 77–1357 to 77–1360.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1978.

Decided Oct. 19, 1978.

S. Strother Smith, Abingdon, Va. (Smith, Robinson & Vinyard, Abingdon, Va., on brief), for appellants.

Haney H. Bell, Roanoke, Va., Charles B. Flannagan, II, Abingdon, Va. (Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., Woodward, Miles & Flannagan, Bristol, Va., and Penn, Stuart, Eskridge & Jones, Abingdon, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

FIELD, Senior Circuit Judge:

Four actions for damages were filed in the district court against Beatrice Pocahontas Coal Company ("Beatrice"), Virginia Pocahontas Coal Company ("Virginia Pocahontas"), and one of their common corporate "parents," Island Creek Coal Company ("Island Creek"),[1] by Virginia citizens who

---

1. Beatrice was alleged to be a "joint venture" between Island Creek and Republic Steel Corporation, each of which owned 50% of its stock. Virginia Pocahontas was alleged to be a "joint venture" between Island Creek and Jones & Laughlin Steel Company; its stock

claimed to have been injured by seismic tremors emanating from the mining operations of Beatrice and Virginia Pocahontas. The cases were consolidated for the purpose of ruling on a motion to dismiss for lack of diversity jurisdiction. Because all three defendants were incorporated outside Virginia, and since it was agreed that Island Creek was not a citizen of Virginia within the meaning of the diversity statute,[2] an April, 1976, evidentiary hearing upon the motion was directed primarily to the issue of whether the State of Virginia was the principal place of business of either Beatrice or Virginia Pocahontas.[3] After the hearing, but before the motion was decided, the plaintiffs were permitted to amend their pleadings to add as parties defendant the Republic Steel Corporation and the Jones & Laughlin Steel Company on the ground that, like Island Creek, these corporations were part owners of Beatrice and Virginia Pocahontas and might also be liable for damages.[4]

By an "Opinion and Order" dated September 29, 1976, the cases were dismissed for "lack of subject matter jurisdiction."[5] The district court ruled that Beatrice and Virginia Pocahontas had their principal places of business in Virginia, and that consequently the requisite diversity of citizenship between the adversary parties did not exist. Assessing principally the relationship between both companies and Island Creek, the court found Beatrice and Virginia Pocahontas to be discrete corporate entities for jurisdictional purposes and rejected the plaintiffs' suggestion that it "pierce their corporate veils" for the purpose of attributing to them the allegedly foreign citizenship of "their parent corporations."

On October 3, 1976, plaintiffs served the defendants with a "Petition for Relief From Mistake in Judgment." Invoking the "terms and conditions of Rule 60(b)(1)(2)," the motion asked the court to amend the September 29 order to dismiss only Beatrice and Virginia Pocahontas for lack of diversity, retaining Island Creek, Republic Steel Corporation, and Jones & Laughlin Steel Company as parties defendant. The justification advanced for the request was that "apparently the Court neglected to remember" that it had earlier allowed the addition of Republic Steel and Jones & Laughlin as defendants; that in view of the "ultra [sic] ego concept" of the relationship between Beatrice and Virginia Pocahontas, on the one hand, and Republic Steel, Jones & Laughlin, and Island Creek on the other, Beatrice and Virginia Pocahontas were not "essential parties" to the action; and that the case should thus continue as to the three "parent" defendants, none of whom are Virginia citizens. The petition was denied without comment by order of December 9, 1976.

By motion filed more than thirty days later on January 17, 1977, plaintiffs asked the district judge to extend the time for filing notices of appeal to this court. The extension was granted "for a period of 20 days from January 9, 1977," and on January 26, appeals were filed in all four cases (1) "as to the question of the jurisdiction of the United States District Court upon diversity," and (2) "upon [the] Order in the Petition for Relief From Mistake in Judgment." The defendants thereafter moved this court to dismiss the appeals on the ground that they were not filed in accordance with Rule

---

was owned 75% by Island Creek and 25% by Jones & Laughlin.

**2.** 28 U.S.C. § 1332 provides in pertinent part:
  (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
    (1) citizens of different States;
      * * * * * *
    (c) For the purpose of this section * *, a corporation shall be deemed a citizen of

any State by which it has been incorporated and of the State where it has its principal place of business: * * *.

**3.** The Virginia citizenship of the plaintiffs for diversity purposes was not in issue.

**4.** See n. 1, supra.

**5.** The "Opinion and Order" is reported as Caperton v. Pocahontas, 420 F.Supp. 445 (W.D. Va.1976).

4(a) of the Federal Rules of Appellate Procedure. For the reasons which follow, we deny the motion to dismiss but affirm the orders from which the appeals were taken.

## THE MOTION TO DISMISS THE APPEALS

The defendants challenge the right of the plaintiffs to appeal from the September judgment of dismissal for lack of subject matter jurisdiction, as well as from the December order denying the "Petition for Relief From Mistake in Judgment."

■ As to the September judgment, the defendants argue that the plaintiffs waited too long to file notices of appeal to this court, and that we therefore lack jurisdiction to review the district court's conclusion that Beatrice and Virginia Pocahontas are citizens of Virginia for diversity purposes.[6] To the extent that this argument is based upon Rule 4(a) of the Federal Rules of Appellate Procedure, the plaintiffs acknowledge its validity. They agree with the defendants that the order of dismissal was entered in the court below on September 29, 1976, and concede that in order to perfect an appeal from the judgment under

the standards imposed by Rule 4(a), either the notices of appeal should have been filed several months earlier, or the "Petition for Relief From Mistake in Judgment" should have been filed one day sooner.[7] The only response offered by the plaintiffs in opposition to the motion is that in order to avoid an "unduly harsh" result, and pursuant to Rule 2, Fed.R.App.P. (*Suspension of Rules*), we should remove the only obstacle to appellate review by excusing their failure to comply with Rule 4(a). This suggestion is totally lacking in merit since we have no such power under Rule 2. *See* Rules 2 and 26(b), Fed.R.App.P.

With respect to the December denial of the "Petition for Relief From Mistake in Judgment," the defendants concede its appealable nature, but argue that, absent notice to them in advance, the district court had no authority under Rule 4(a) to grant the extension of time during which the notices of appeal from the order were filed.[8] Plaintiffs reply that Rule 4(a) required only such notice to the defendants as the court deemed appropriate, and that receipt by the defendants of a copy of the plaintiffs' motion for an extension of time constituted sufficient notice.[9]

---

**6.** It is settled that the failure to timely file a notice of appeal deprives this court of jurisdiction to review the judgment or order with which the appealing party is dissatisfied. *See Browder v. Director*, 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *Morin v. United States*, 522 F.2d 8, 9 (4 Cir. 1975); Notes of Advisory Committee, Rule 3, Fed.R.App.P.

**7.** Rule 4(a) requires that the notice of appeal in a civil case be filed within 30 days of the entry of the judgment from which the appeal is taken. However, where entry of judgment is followed within 10 days by service of a motion under Civil Rule 59(e) to alter or amend the judgment, the 30-day period in which to file an appeal from the judgment begins to run on the date when an order disposing of the motion is entered. Upon a showing of "excusable neglect," the trial court may grant a party additional time to appeal, not to exceed 30 days measured from the date on which the filing period would otherwise have ended.

Treating September 29 as the date on which the dismissals were entered, the parties here recognize that, although in substance qualifying as a Rule 59(e) motion, the plaintiffs' "Petition" would have to have been served on October 12 (allowing for a weekend and a holiday)

rather than October 13 in order to be timely under Rule 59(e) and to toll the running of the filing period. Since it was not, they agree that the plaintiffs had only until October 29 (the 30th day following September 29) to perfect appeals from the dismissals, and that the notices filed three months later during the court-granted extension of time were ineffective because the extension exceeded the maximum allowable extension under Rule 4(a).

**8.** Rule 4(a) provides that if a request for extension of the time to file is made after the initial 30-day period has expired, "it shall be made by motion with such notice as the court shall deem appropriate." In their rebuttal brief, the defendants maintain that the provision for notice also means that they should have been granted an opportunity to be heard in opposition to the plaintiffs' request for an extension.

**9.** The parties seem to agree that if the extension was validly granted under the Rule, then the appeals from the December order were timely filed since the order was entered December 9, the initial 30-day filing period ended on January 8, and the extension from January 9, within which the filings were made, did not exceed 30 days.

On a basis brought to our attention by none of the parties, we conclude that the motion to dismiss the appeals for untimeliness must be denied. By our decision on this point, it should not be inferred that we condone the plaintiffs' apparent disregard for common precepts of appellate procedure, nor should our opinion be read to countenance the delay of 119 days between the September dismissals and the filing of notices of appeal on January 26th. In an ordinary case we would dismiss, without the slightest hesitation, an appeal prosecuted in such a dilatory fashion. The appellants survive the dismissal motion only because the grounds assigned by the defendants rest upon a pivotal assumption which is not supported by the record.

■ In their briefs and oral arguments, the plaintiffs and the defendants have repeatedly asserted that the order of dismissal for lack of jurisdiction was "entered" in the district court on September 29, 1976. Precise identification of the date on which an order or judgment was entered is necessary whenever the timeliness of an appeal to this court is in issue, since the time for filing a notice of appeal under Rule 4(a) begins to run only upon "entry" of a judgment order [10] and, absent such an entry, a party will not ordinarily be found to have exceeded any of the time periods set forth in the Rule, regardless of when the notice of appeal was filed.[11] "Entry" has a well defined meaning under the rules; it occurs only when the essentials of a judgment or order are set forth in a written document separate from the court's opinion or memorandum *and* when the substance of this separate document is reflected in an appropriate notation on the docket sheet assigned to the action in the district court. This dual requirement is established by Civil Rule 58, *Entry of Judgment*, which states that "[e]very judgment shall be set forth on a separate document" [12] and that "[a] judgment is effective only when so set forth and when entered as provided in Rule 79(a)." [13] Rule 4(a), which is derived without change in substance from a former civil rule,[14] incorporates both of these standards.[15]

■ The record in these cases reveals that the dismissals for lack of jurisdiction were never "entered" within the definitive meaning of that term. Contrary to the assertions of the parties, September 29, 1976, is the date on which the opinion explaining the dismissals was filed; not the date on which separate documents reflect-

---

**10.** Rule 4(a) provides that "the notice of appeal * * * shall be filed * * * within 30 days of the date of the *entry* of the judgment or order appealed from." Where a timely post-judgment motion under Civil Rule 59(e) has been filed, the 30-day period is to be computed "from the *entry*" of the order granting or denying Rule 59(e) relief. Even the question of whether the Rule 59(e) motion is timely (and therefore capable of tolling the appeal period) depends upon when "entry" of the judgment occurred. Rule 59(e) provides that such a motion is timely only if served "not later than 10 days after *entry* of the judgment." *See* n. 7, *supra*.

**11.** *See United States v. Indrelunas*, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) (decided under the predecessor to Rule 4(a)); *Superior Life Insurance Company v. United States*, 462 F.2d 945 (4 Cir. 1972).

**12.** "Judgment" as used in Rule 58 includes any order, such as one dismissing a case for lack of jurisdiction, from which an appeal lies. *See* Rule 54(a), Fed.R.Civ.P. Where the judgment is one of dismissal for want of jurisdiction, it would seem to be the province of the district clerk to draft the separate document, unless the court otherwise directs. *See* 6A Moore's Federal Practice ⁗ 58.04[4.–2], pp. 58–163 thru 164 (Second Ed. 1974).

**13.** Rule 79(a), Fed.R.Civ.P., directs that the district clerk shall briefly and chronologically note on the folio assigned to each action the nature of each paper which is filed in the action, as well as the substance of each order or judgment of the court.

**14.** Rule 4(a) tracks former Rule 73(a), Fed.R. Civ.P.

**15.** *See* Notes of Advisory Committee, Rule 58, Fed.R.Civ.P., 1963 Amendment, which state that one of the primary purposes for so defining "entry" was to eliminate uncertainties as to when the time for taking an appeal begins to run. *See also Bankers Trust Company v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).

ing the dismissals were *entered*.[16] The district court docket sheets, which would evidence entry of the dismissals had that occurred, each contain only one notation relative to the dismissals, which reads:

> "9–30–76  Opinion and Order dated 9–29–76 dismissing these four cases for lack of subject matter jurisdiction. CIV. O. B. # 33, p. 18. Certified copies hereof mailed to counsel of record."

That this notation refers to the district court's ten-page opinion,[17] as opposed to any separate judgment, is indicated by the references it contains to the exact title and date which appear on the opinion. Most relevant, however, is the absence from the record on appeal of any "separate document" reflecting the judgments of dismissal apart from the memorandum itself; an order of dismissal tacked onto the end of an opinion, no matter how explicit, simply does not qualify as a separate document for the purpose of evaluating the timeliness of an appeal.[18] While this line of analysis may seem pedantic, it is required by the command that the "separate document" provision of the rules be "mechanically applied" when a party's compliance with Rule 4(a) is questioned. *United States v. Indrelunas*, 411 U.S. 216, 222, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973).

■  Accordingly, there is no merit in the defendants' contention that under Rule 4(a) the plaintiffs delayed too long to file appeals from the dismissals for lack of jurisdiction, since the time for taking appeals had never commenced to run. The same can be said for the appeals from the denial of the "Petition for Relief From Mistake in Judgment." Even though an order denying the Petition was "entered" in the Rule 58 sense of the word,[19] the time to appeal from the denial of a motion which questions the correctness of a judgment cannot begin to run before the judgment sought to be changed is entered.[20] On this point, we note that such a result could have been avoided by the defendants had they acted to prevent it.[21] It makes no difference that the plaintiffs did not urge, in opposition to the motion to dismiss the appeals, the ground upon which we rely, or that despite their belief that judgment had been entered, they nonetheless failed to comply with the time strictures of Rule 4(a). The timely filing of a notice of appeal is a jurisdictional matter, n.6, *supra*, as to which we should inquire on our own initiative, *see Richland Knox Mutual Insurance Co. v. Kallen*, 376 F.2d 360, 363 (6 Cir. 1967); nor are we free to penalize plaintiffs for their procedural nonchalance by binding them to their erroneous assertion that judgments of

---

**16.** The opinion bears the notation "DATED: This 29 Day of September, 1976" immediately above the district judge's signature, and on its face is stamped "FILED Sep 29 1976." For a discussion on the distinctions between rendition, filing, and entry of judgment, *see* 6A Moore's Federal Practice ¶ 58.02 (Second Ed. 1974).

**17.** *See* n. 5, *supra*.

**18.** *See Cloyd v. Richardson*, 510 F.2d 485 (6 Cir. 1975); *Baity v. Ciccone*, 507 F.2d 717 (8 Cir. 1974); *State National Bank v. United States*, 488 F.2d 890 (5 Cir. 1974). *Cf. Superior Life Insurance Company v. United States*, 462 F.2d 945 (4 Cir. 1972).

**19.** The order denying the requested relief was summarily set forth on a single paper, and a notation reflecting the order was made on the docket sheets on December 9, 1976.

**20.** To hold otherwise would create the anomaly that the time to appeal the rejection of the

proposed amendment to the judgment would run out prior to the expiration of the time to appeal from the judgment itself, with the result that the disappointed party would be required to file two notices of appeal, one from the judgment and another from the rejection of his objections to the judgment. Were he to timely file an appeal from only the judgment, he would run the risk that the rejection of his primary objections to the judgment, reflected in the motion to amend, might be treated as unreviewable on appeal by reason of his failure to appeal from the denial of the amendment. The rules reflect a clear purpose to avoid perplexing problems of this kind. *See* Notes of the Advisory Committee, n. 15, *supra*.

**21.** A party may, by motion, request that the district judge enter judgment on a separate document. *See State National Bank v. United States*, 488 F.2d 890 (5 Cir. 1974).

dismissal *had* been entered. *Cf. United States v. Indrelunas, supra,* 411 U.S. at 221, 93 S.Ct. 1562.

While the absence of properly-entered judgments disposes of the charge that the appeals were untimely filed, it raises the further question of whether we may consider the merits of the appeals without first requiring that the plaintiffs obtain judgments which formally comply with Rule 58. Relying upon language in the case of *United States v. Indrelunas, supra,* to the effect that a judgment is not appealable until it has been entered in accordance with Rule 58, some circuits have held that the proper entry of judgment is essential to appellate jurisdiction and that an appeal from a judgment which has not been set forth in a separate document must be dismissed so that the appealing party may return to district court, secure a judgment which conforms with Rule 58, and prosecute the appeal anew.[22] We, however, took a contrary position in a post-*Indrelunas* decision. In *W. G. Cosby Transfer & Storage Corp. v. Froehlke,* 480 F.2d 498, 501 n.4 (4 Cir. 1973), we held that the absence of a "separate document" would not preclude our review of the merits where both parties "treated the order as validly entered." When, subsequent to our decision in *Froehlke,* the Second Circuit for similar reasons declined to dismiss an appeal despite the court's inability to find in the record "any document that looks like a judgment," *Mallis v. Federal Deposit Ins. Corp.,* 568 F.2d 824, 827 n.4 (2 Cir. 1977), the Supreme Court granted certiorari and resolved the conflict between the circuits as to whether an appeal must be dismissed if the "separate document" required by Rule 58 has not been entered. *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam).

In *Mallis* the Court disavowed the language of *Indrelunas* which some courts had interpreted to mean that the entry of judgment on a separate document was an abso-lute prerequisite to the exercise of appellate jurisdiction, and observed that "the sole purpose of the separate document requirement, which was added to Rule 58 in 1963, was to clarify when the time for appeal * * * begins to run." 435 U.S. at 385, 98 S.Ct. at 1120.

> "The separate document requirement was thus intended to avoid the inequities that were inherent when a party appealed from a document or docket entry that appeared to be a final judgment of the District Court only to have the Appellate Court announce later that an earlier document or entry had been the judgment and dismiss the appeal as untimely. The 1963 amendment to Rule 58 made clear that a party need not file a notice of appeal until a separate judgment has been filed and entered." *Id.*

The Court noted, however, that although no separate judgment has been entered, in many cases where an appeal has already been filed, it would be pointless to require an appellant to return to the district court to obtain a separate document as a prerequisite to entertaining the appeal.

> "Certainty as to timeliness * * * is not advanced by holding that appellate jurisdiction does not exist absent a separate judgment. If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the Court of Appeals to dismiss the appeal. Upon dismissal, the District Court would simply file and enter the separate judgment, from which a timely appeal would then be taken. Wheels would spin for no practical purpose." *Id.*

Citing Professor Moore's admonition that the separate judgment rule "should be interpreted to prevent loss of the right of appeal, not to facilitate loss," 9 Moore's Federal Practice ¶ 110.08[2], at 119–120, the Court held that the parties "should be deemed to have waived the separate judgment requirement" and that "the Court of Appeals properly assumed appellate jurisdiction" to review a final judgment where (1) "the District Court clearly evidenced its

---

**22.** See the cases cited in *Bankers Trust v. Mallis,* 435 U.S. 381, 1119 n.2, 98 S.Ct. 1117, 55 L.Ed.2d 357 (March 28, 1978).

intent that the opinion and order from which an appeal was taken would represent the final decision in the case"; (2) a judgment of dismissal "was recorded in the clerk's docket"; and (3) the appellees "did not object to the taking of the appeal in the absence of a separate judgment." 435 U.S. at 387–388, 98 S.Ct. at 1121.

■ In our opinion, the appeals in these cases from the dismissals for lack of jurisdiction meet the criteria established in *Mallis*. The district court's direction that "these four cases are dismissed for lack of subject matter jurisdiction," 420 F.Supp. at 451, together with its action upon the "Petition for Relief From Mistake in Judgment" and its purported extension of the time to appeal, convince us that the district judge viewed the dismissals as final, and appealable orders. Though not set forth in separate documents, the dismissals were reflected in the docket entries of September 30, 1976, p. 12, *supra*. Finally, as heretofore noted, the defendants challenge these appeals only upon the grounds of untimeliness. At no time did they raise an objection based upon the absence of separate judgments. Accordingly, we will consider the merits of the appeals from the dismissals without requiring that the plaintiffs return to district court to obtain judgments which comply with Rule 58.

The appeals from the denial of the "Petition for Relief From Mistake in Judgment" do not pose a similar question, since the order denying the requested amendment of the judgments was entered as prescribed in Rule 58. *See* n.19, *supra*.

## THE DISMISSALS FOR LACK OF DIVERSITY JURISDICTION

■ Although we accept jurisdiction to review the dismissals, we do not find that the district court's findings of fact were clearly erroneous or that it misapplied the pertinent law. For the reasons advanced by the district court, 420 F.Supp. at 447–451, we affirm the conclusions that Beatrice and Virginia Pocahontas had their principal places of business in the State of Virginia, that it would be inappropriate to attribute to either of these defendants the corporate citizenships of its shareholders, and that diversity of citizenship does not exist between the plaintiffs and Beatrice or Virginia Pocahontas.

## THE DENIAL OF THE "PETITION FOR RELIEF FROM MISTAKE IN JUDGMENT"

■ We view the "Petition for Relief From Mistake in Judgment" as a request by the plaintiffs that the district court (1) reopen the judgments of dismissal for lack of jurisdiction; (2) reinstate the complaints; (3) dismiss Beatrice and Virginia Pocahontas as parties defendant on the basis that neither is an indispensable defendant within the meaning of Rule 19, Fed.R.Civ.P.;[23] and (4) exercise diversity jurisdiction to adjudicate the claims for damages against the remaining defendants, none of which is a citizen of the same state as the plaintiffs. There is, of course, sound authority for the view that non-diverse parties whose presence is not essential under Rule 19 may be dropped to achieve diversity between the plaintiffs and the defendants, *Horn v. Lockhart*, 84 U.S. (17 Wall.) 570, 21 L.Ed. 657 (1873); *Jett v. Phillips & Associates*, 439 F.2d 987 (10 Cir. 1971); *Kerr v. Compagnie De Ultramar*, 250 F.2d 860 (2 Cir. 1958); *Weaver v. Marcus*, 165 F.2d 862 (4 Cir. 1948), and it has been recognized

**23.** Rule 19, of course, in terms addresses the question of whether a party should be *joined*; it does not expressly authorize the *dismissal* of a party whose presence is not essential to the litigation. The trial court's authority to permit the dismissal of a party is derived from either Rule 21, Fed.R.Civ.P., *Misjoinder and Non-Joinder of Parties*, or Rule 15, *Amended and Supplemental Pleadings*. *Ralli-Coney, Inc. v. Gates*, 528 F.2d 572, 575 (5 Cir. 1976) (Rule 21); *Kerr v. Compagnie De Ultramar*, 250 F.2d 860, 864 (2 Cir. 1958) (Rule 15); *Weaver v. Marcus*, 165 F.2d 862, 864 (4 Cir. 1948) (Rule 21); *O'Neal v. National Cylinder Gas Co.*, 103 F.Supp. 720, 723–4 (N.D.Ill.1952) (Rule 21). Rule 19 is relevant to the determination whether dismissal is appropriate under either Rule 21 or Rule 15, since, for the reasons stated in the cases next cited in the text, Rule 19 supplies the definition of "indispensable party" to be employed by the trial court in ruling on such a motion.

694

that motions to do so may be made even after judgment has been rendered. *See Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003, 1011–1013 (E.D.Pa.1975), *affirmed*, 530 F.2d 966 (3 Cir. 1976); 3 Moore's Federal Practice ¶¶ 15.08[3], [4] (Second Ed. 1978). However, the matter is committed to the discretion of the trial court, and "it does not follow as a matter [of] right that a party can be dropped at the mere desire of the plaintiff." *Weaver v. Marcus, supra*, 165 F.2d at 864. If the non-diverse party whose dismissal is sought is indispensable then, of course, the motion must be denied and the case dismissed for lack of diversity jurisdiction. *Haas v. Jefferson National Bank*, 442 F.2d 394 (5 Cir. 1971); *Young v. Garrett*, 149 F.2d 223 (8 Cir. 1945); *Potomac Electric Power Co. v. Babcock & Wilcox Co.*, 54 F.R.D. 486 (D.Md. 1972).

■ On the appeals from the denial of relief requested in the "Petition", the central issues would appear to be whether or not Beatrice and Virginia Pocahontas were indispensable parties under the criteria set forth in Rule 19,[24] and whether the district court abused its discretion in declining to dismiss them as parties defendant. Strangely enough, the briefs are silent on these points, the parties choosing instead to direct their arguments to the question of appealability and whether or not Beatrice and Virginia Pocahontas should be considered citizens of Virginia. While the failure to *join* an indispensable party may bear so heavily upon jurisdictional or equitable considerations that we should address it *sua sponte*,[25] we do not see that the issue of whether the district court in its discretion should have *dismissed* certain of the named defendants because they were *not* indispensable is deserving of such treatment. Since the parties have not seen fit to address this issue, we do not feel it incumbent upon us to search the record for error and

select from the mass of authority on the subject arguments which might support the position which the notices of appeal suggest would have been advantageous to the plaintiffs. Under these circumstances, we find nothing that would persuade us to set aside the order of the district court entered on December 9, 1976.

As a lagniappe, however, we note that even had Beatrice and Virginia Pocahontas been dismissed, it would appear that under Virginia law the "parent corporations" could not have been held liable for the injuries of which the plaintiffs complain. *See Garrett v. Ancarrow Marine, Inc.*, 211 Va. 755, 180 S.E.2d 668 (1971); *Washington & O. D. U. Ass'n v. Washington & Old Dom. R.*, 208 Va. 120, 155 S.E.2d 322 (1967); *Lewis Trucking Corp. v. Commonwealth*, 207 Va. 23, 147 S.E.2d 747 (1966); *Beale v. Kappa Alpha Order*, 192 Va. 382, 64 S.E.2d 789 (1951).

AFFIRMED.

---

**24.** *See* Judge Craven's opinion in *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78, 85–86 (4 Cir. 1973), where these criteria are set forth and applied in the face of the contention that joinder of a non-diverse party was compulsory.

**25.** *Boles v. Greeneville Housing Authority*, 468 F.2d 476 (6 Cir. 1972); *Calcote v. Texas Pac. Coal & Oil Co.*, 157 F.2d 216 (5 Cir. 1946), *cert. denied* 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671 (1946); *Brown v. Christman*, 75 U.S.App.D.C. 203, 126 F.2d 625 (1942). *Cf. Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).