# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 08-2976/08-3128

_____

Friedman & Friedman, Ltd., an Illinois   *
Corporation; Jeanne Enders; Arie S.     *
Friedman; Gail Tuler Friedman;        *
Eugene F. Friedman,               *
                           *

        Plaintiffs–Appellees/   *
        Cross-Appellants,     *
                           *

   v.                         *
                           *

Tim McCandless, Inc., an Iowa      *   Appeals from the United States
Corporation; Paul Roloff,          *   District Court for the
                           *   Northern District of Iowa.
        Defendants–Appellants/   *
        Cross-Appellees,     *
                           *

Swieter Aircraft Services, Inc; Irwin   *
Swieter; Richard Baxter,        *
                           *

        Defendants,        *
                           *

State of Iowa ex rel. Civil       *
Reparations Trust Fund,        *
                           *

        Intervenor–Appellee.   *

_____

Submitted: October 20, 2009
Filed: May 25, 2010

_____

Before WOLLMAN, MURPHY and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

Friedman & Friedman, Ltd.[1] (Friedman) brought this action against Tim McCandless, Inc. (McCandless) which sold it an airplane which allegedly failed to comport with the contract and with the representations by the seller and its sales manager Paul Roloff.[2] A jury returned a verdict in Friedman's favor, finding that McCandless had breached the contract and that McCandless and Roloff had fraudulently misrepresented the plane's condition. McCandless appeals on the ground that the district court refused to instruct the jury on Friedman's duty to provide timely notice of the plane's alleged nonconformity with the contract. We reverse and remand for a new trial.

I.

We view the facts in the light most favorable to Friedman because the jury ruled in its favor. Wilson v. City of Des Moines, 442 F.3d 637, 639 (8th Cir. 2006). In May 2002, the law firm of Friedman & Friedman, Ltd. purchased a 1981 Cessna Model P210 airplane from the aircraft dealer Tim McCandless, Inc. Each side produced a document which was claimed to be the purchase contract: a letter agreement, which was produced by Friedman, and an aircraft purchase agreement by McCandless. Both documents required the plane to be airworthy and certified as such. The letter agreement produced by Friedman made no warranty

_____

[1]There were also four individual plaintiffs but each was dismissed with consent before the case was submitted to the jury (Jeanne Enders and Arie, Gail, and Eugene Friedman).

[2]All claims against defendants Irwin Swieter and Swieter Aircraft Services, Inc. were dismissed on a motion for directed verdict after the close of Friedman's case in chief.

-2-

disclaimers and required the plane to be delivered complete with the promised components and accessories. The aircraft purchase agreement, on the other hand, offered the plane as is and made no representations about components or accessories.

Before the plane was delivered, Livingston Aviation, Inc. inspected it and found it "unairworthy." Shortly thereafter, repairs were performed by defendant Swieter Aircraft Services, Inc. McCandless then delivered the plane to Friedman on May 15, 2002. About two months later, on July 12, 2002, Friedman called McCandless's attorney to report that the plane was not airworthy. Counsel asked Friedman to provide a list of the plane's defects, but no further communications took place for nearly ten months. Then on May 8, 2003 Friedman sent a list of repairs needed and work completed, along with a demand for payment. McCandless rejected the demand.

Friedman first sued in Illinois state court, but that action was dismissed for lack of jurisdiction. It then filed this diversity case in federal district court, charging that McCandless had both breached the letter agreement and, in concert with its sales manager Roloff, fraudulently misrepresented that the plane was (1) airworthy and certified as such, (2) safe for flight, and (3) complete with the promised components and accessories. McCandless responded with its own action in Iowa state court which was subsequently removed to the federal district court where the cases were consolidated with the parties' consent.

In addition to Friedman's breach of contract and fraudulent misrepresentation claims, the consolidated action included claims and counterclaims which were dismissed before the case was submitted to the jury. Immediately before trial the court dismissed the following by consent: Friedman's claims for promissory estoppel and intentional infliction of emotional distress; Friedman's claims against defendant Richard Baxter; and McCandless's

counterclaims for breach of contract, fraud, and abuse of process. After the close of Friedman's case in chief, the defendants successfully moved for directed verdicts on Friedman's claims for conversion, violation of the Illinois Consumer Fraud and Deceptive Practices Act, and civil conspiracy to commit fraud and breach of contract.

Although McCandless did not plead an affirmative defense to the breach of contract claim in its federal court answer to Friedman's complaint, the final pretrial order issued by the district court expressly provided that one of the issues at trial would be its defense that Friedman was barred from recovering on the contract for failing to provide timely notice of the plane's nonconformity. After the close of evidence, McCandless offered jury instructions on a buyer's duty under Iowa law to provide the seller with timely notice of nonconforming goods. The district court declined to give the requested instructions, however. It overruled McCandless's objection on the ground that the proposed instructions "would comment on the evidence and would potentially modify the purported contracts," but it allowed the parties to discuss their views about the contractual terms in their closing arguments.

The magistrate judge submitted the case to the jury using a verdict form with six questions:

> 1. Did Plaintiff prove by the greater weight or preponderance of the evidence its claim for breach of contract against Tim McCandless, Inc.?

> 2. Did Plaintiff prove by a preponderance of clear, satisfactory, and convincing evidence its claim for fraudulent misrepresentation against Defendants?

3. State the amount of damages Plaintiff sustained as a proximate result of Defendants' breach of contract or fraudulent misrepresentation.

4. Do you find by a preponderance of clear, convincing, and satisfactory evidence that the conduct of Defendants constituted willful and wanton disregard for the rights or safety of another?

5. What amount of punitive damages, if any, do you award?

6. Was the conduct of Defendants directed specifically at Plaintiff?

The jury was instructed to answer yes or no to questions 1, 2, 4, and 6. It answered "yes" to questions 1, 2, and 4. Question 3 called for "the amount of damages Plaintiff sustained as a proximate result of Defendants' breach of contract **or** fraudulent misrepresentation." (emphasis added). The jury's answer was $26,468.36. It also awarded $50,000.00 in punitive damages in response to question 5 and answered the final question "no."

McCandless and Roloff appeal from the judgment and from the denial of their motion for a new trial or for amendment of the judgment. McCandless contends that a new trial is required because the district court abused its discretion by excluding its requested jury instructions on the timely notice of nonconformity defense to the breach of contract claim. It also argues, in concert with Roloff, that a new trial is required because two of the jury findings with respect to fraudulent misrepresentation were irreconcilably inconsistent. Friedman cross appeals from the denial of its bill of costs for failure to comply with local rules.

II.

A.

Friedman argues that McCandless waived its affirmative defense on the contract claim by failing to plead in its answer that Friedman had not provided timely notice of the plane's alleged nonconformity.[3]  McCandless admits that an affirmative defense not raised in the defendant's responsive pleadings is generally forfeited, Sayre v. Musicland Group, Inc., 850 F.2d 350, 354 (8th Cir. 1988), but it argues that inclusion of the defense in the court's final pretrial order as one of the issues to be tried preserved the issue for trial.

The final pretrial conference and order "measure[] the dimensions of the lawsuit," including the issues to be tried. United States v. 84,615 in United States Currency, 379 F.3d 496, 499 (8th Cir. 2004) (internal quotation marks and citation omitted).  The final pretrial conference is critical for "promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone." Fed. R. Civ. P. 16 Advisory Committee Note (1983 Amendment to subdivision (c)).  As a result, "the agreements and stipulations made at [the] final conference will control the trial."  Id. (1983 Amendment to subdivision (d)).  The issues identified at the final pretrial conference and the agreements and stipulations made there are incorporated into the final pretrial order, which thereafter "controls the course of the action." Fed. R. Civ. P. 16(d).

_____

[3]Friedman also argues that the defense of lack of timely notice of nonconformity is unavailable to McCandless because (1) it is not a defense to fraudulent misrepresentation, and (2) even if it were, McCandless waived the defense by failing to object to any of the jury instructions regarding it.  Both arguments are misplaced.  The jury found McCandless liable for both breach of contract and fraudulent misrepresentation.  Failure of timely notice of nonconformity is a defense to the claim for breach of contract,  Iowa Code § 554.2607(3)(a), and McCandless objected to the district court's failure so to instruct the jury.

Indeed, because "[its] purpose is to guide the course of the litigation," Fed. R. Civ. P. 16 Advisory Committee Note (1983 Amendment to subdivision (e)), the final pretrial order supersedes the pleadings. 84,615 in United States Currency, 379 F.3d at 499. Thus, an issue identified in the pretrial order is properly within the scope of the trial even though it was not included in the original pleadings. For example, in American Surety Co. of N.Y. v. Williford, 243 F.2d 494 (8th Cir. 1957), we concluded that the district court did not err by ruling upon the existence of an unpled oral contract precisely because the pretrial order specified that the existence of that contract was an issue to be determined at trial. Id. at 496.

An unpled affirmative defense identified in the pretrial order is no exception to the rule that issues identified in the pretrial order supersede the pleadings. See 84,615 in United States Currency, 379 F.3d at 499. Its absence from the original pleadings therefore does not work a forfeiture of the right to assert the defense at trial. See also Vaughn v. King, 167 F.3d 347, 352 (7th Cir. 1999) (concluding that unpled affirmative defense was preserved by inclusion in pretrial order); Management Investors v. United Mine Workers, 610 F.2d 384, 390 n.17 (6th Cir. 1979) (rejecting as "clearly meritless" contention that unpled affirmative defense is not preserved by inclusion in pretrial order). McCandless preserved the defense of timely notice of nonconformity by expressly including it in the final pretrial order approved by the court. (Final Pretrial Order 18.) That is especially clear here, where the pretrial order was jointly drafted by the parties and Friedman failed to object at the final pretrial conference to the inclusion of McCandless's defense in the final pretrial order.

## B.

We turn next to the substance of McCandless's contention that the district court abused its discretion when it refused to instruct the jury on Friedman's duty to provide timely notice of the plane's nonconformity with the contract. McCandless argues that this error necessitates a new trial because it deprived it of a

viable defense which was supported by evidence. We review the district court's jury instructions for an abuse of discretion. <u>Boesing v. Spiess</u>, 540 F.3d 886, 891 (8th Cir. 2008).

A party is entitled to a jury instruction on its theory of the case if the instruction is both legally accurate and supported by the evidence. <u>Thornton v. First State Bank of Joplin</u>, 4 F.3d 650, 652 (8th Cir. 1993). The district court is afforded broad discretion in choosing the form and substance of the jury instructions, however. The instructions need be neither technically perfect nor a model of clarity. <u>Mems v. City of St. Paul</u>, 327 F.3d 771, 781 (8th Cir. 2003).

Appellate review of jury instructions focuses on "whether the instructions, when taken as a whole and in light of the particular issues presented, fairly and adequately presented the evidence and the applicable law to a jury." <u>Id.</u> An erroneous instruction warrants a new trial only if the error "misled the jury or had a probable effect on the verdict." <u>Slidell, Inc. v. Millennium Inorganic Chemicals, Inc.</u>, 460 F.3d 1047, 1054 (8th Cir. 2006).

Because jurisdiction here is based upon diversity of citizenship, Iowa law governs the substance of the jury instructions. <u>See</u> <u>Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.</u>, 254 F.3d 706, 711 (8th Cir. 2001). McCandless submitted two jury instructions purporting to summarize the Iowa Uniform Commercial Code (IUCC) provisions which establish a buyer's duties upon receipt of goods delivered pursuant to a contract. Neither was given by the court.

Both instructions fairly summarize the applicable state law. <u>See</u> Iowa Code §§ 554.2513, .2602, .2606–07, .2714. Requested instruction 6 provided that:

> A buyer of goods, such as the subject airplane, has the right to inspect the airplane prior to payment or acceptance of the airplane from the seller. If, after inspection by the buyers, the airplane was accepted,

then the buyer must pay the contract price for the plane which was accepted.

Requested instruction 7 read as follows:

A buyer must pay at the contract rate for any goods which it has accepted. To recover damages once the plane has been accepted, the burden is on the buyer to show that, within a reasonable time after the buyer discovered, or should have discovered, any breach [it] notif[ied] the seller of the breach, or [the buyer will] be barred from any further remedy.

The defense incorporated in instruction 7 was an issue at trial. A buyer is barred from recovering if it fails to provide the seller with timely notice of the goods' nonconformity with the contract. Both the letter agreement and the aircraft purchase agreement required that the plane be airworthy and certified as such. Since the jury found that McCandless breached the contract, it necessarily found that McCandless delivered a plane that was either not airworthy, not certified as airworthy, or both. Friedman could not recover for that breach, however, unless the jury also found that it had seasonably notified McCandless of the plane's nonconformity. See § 554.2607. The jury was never instructed on Friedman's duty, for the district court rejected requested instruction 7 and offered no alternative instruction. If there was evidence supporting the instruction, its exclusion was error. See Thornton, 4 F.3d at 652.

Considering the facts in the light most favorable to Friedman, Wilson, 442 F.3d at 639, evidence was adduced at trial which would support a finding that Friedman failed to provide notice of nonconformity within a reasonable period of time. Friedman first notified McCandless that the plane did not conform with the contract on July 12, 2002, nearly two months after having taken delivery. It did not provide a list of specific defects until May 8, 2003, nearly one year after delivery. Friedman contends that the failure to instruct the jury on its duty to provide timely notice of nonconformity was of no effect because the notice it gave was both timely and sufficient to apprise McCandless of the plane's defects.

The reasonableness of the length of time between delivery and notice is, however, a factual question reserved for the jury. Tyrrell Cos. v. Tegeler Design Ctr., 2003 Iowa App. LEXIS 1020, at *4–*5 (Iowa Ct. App. Nov. 26, 2003); see also Chrysler Fin. Co. v. Bergstrom, 703 N.W.2d 415, 421 (Iowa 2005) (listing numerous contexts in which Iowa courts have held reasonableness to be a jury question). Even assuming a jury might find that the July 12, 2002 notification was substantively sufficient, there would still be a jury question as to whether the nearly two month delay between delivery and notice was a reasonable period of time.

Friedman also contends that McCandless failed to carry its burden of production on this affirmative defense because it produced no evidence of what would have been a reasonable period of time within which to provide notice. This argument is unavailing since we cannot say that the shortest delay supported by the evidence (nearly two months) was reasonable as a matter of law. See Tyrrell Cos., 2003 Iowa App. LEXIS 1020, at *4–*5. The evidence at trial would support either of two findings: that the notice was provided within a reasonable time or that it was not. McCandless was therefore entitled to requested instruction 7 or some alternative because that instruction was both legally accurate and supported by evidence. See Thornton, 4 F.3d at 652.

Omission of McCandless's requested instruction was a reversible abuse of discretion if it "misled the jury or had a probable effect on the verdict." Slidell, 460 F.3d at 1054. The district court expressed concern that requested instructions 6 and 7 "would comment on the evidence and would potentially modify the purported contracts." Nevertheless, the district court's exclusion of the instructions, coupled with its failure to provide an alternative, deprived the jury of the law's guidance on an issue over which reasonable jurors could have differed: that is, whether Friedman provided notice of nonconformity within a reasonable time. A negative finding on this question would have provided McCandless a defense to the breach of contract claim. § 554.2607(3)(a).

-10-

The instructions instead implied that finding McCandless in breach of contract would impel a finding of liability, irrespective of whether Friedman had provided timely notice of the plane's nonconformity. That was not only misleading, it was incorrect and reversible. See Slidell, 460 F.3d at 1054. The refusal to instruct the jury on a defense that was supported by sufficient evidence to create a triable issue was an abuse of discretion. Although "[t]he jury may well return the same verdict . . . after a new trial upon proper instructions, . . . we do not think the instructional error was harmless, but instead was harmful, prejudicial, and reversible." Wheeling, 254 F.3d at 714.

### III.

McCandless and Roloff contend that a new trial is required. Whether a new trial is necessary depends on whether or not the judgment can be upheld on the basis of the fraudulent misrepresentation findings of the jury.

The case was submitted to the jury on what generally amounts to a special verdict form. Questions 1 and 2 asked if Friedman had proven its liability theories—first, breach of contract and then, fraudulent misrepresentation. Questions 4, 5, and 6 asked whether there was a basis for punitive damages, in what amount if any, and whether defendants' conduct was directed specifically at Friedman (affecting the division of any punitive damages with the state). Although the jury instructions did not so indicate, punitive damages could be awarded only for the tort of fraudulent misrepresentation. Magnusson Agency v. Public Entity Nat'l Co.–Midwest, 560 N.W.2d 20, 29 (Iowa 1997).

Question 3 was different from the others, however. It was in the nature of a general verdict question because it asked what amount the jury awarded in compensatory damages without linking them to either liability theory: "State the amount of damages Plaintiff sustained as a proximate result of Defendants' breach of contract *or* fraudulent misrepresentation." (emphasis added). The wording of this question thus permitted the jury to fill in the amount of damages it awarded for

-11-

breach of contract *or* for fraudulent misrepresentation *or* for some combination of the two.

If the court had followed the special verdict format it otherwise used, it would have had one compensatory damage question for breach of contract and a separate one for fraudulent misrepresentation. Then there would be no question about what the jury intended. The inability to determine what damages the jury awarded for fraudulent misrepresentation, as opposed to the reversed liability for breach of contract, necessitates a new trial on both claims.[4]

Although Friedman asserted the two claims as alternative theories for recovering the same amount of damages, the jury instructions allowed the damages to be different under each theory. Under those instructions, the breach of contract verdict could have been based on either the letter agreement or the aircraft purchase agreement. Each agreement had different components. The court instructed that the fraudulent misrepresentation verdict could be based on one or more of three alleged misrepresentations: that the plane was (1) airworthy and certified as such, (2) safe for flight, and (3) complete with the promised components and accessories. The jury could award damages flowing from only the

---

[4]The dissent suggests that McCandless failed to preserve this error, citing a First Circuit case which we point out refused to adopt a waiver rule. Davis v. Rennie, 264 F.3d 86, 107 (1st Cir. 2001). In our circuit we have not necessarily required an objection at trial in order to address problems arising from the way in which the case was submitted. See, e.g., Robertson v. Norton Co., 148 F.3d 905, 908 (8th Cir. 1998).

It also quotes a statement made by counsel for McCandless in closing: "There is no difference in damages and *you'll be instructed on that*." Tr. at 789 (emphasis added). Under the instructions, however, the jury was able to assess damages in differing amounts depending on which of the three alleged misrepresentations had been made. The jury no doubt had the power to find a lesser amount than mentioned by either counsel. We also note that McCandless argued different amounts in other parts of its closing. See, e.g., Tr. at 805, 809 (disputing liability for damages claimed on individual items).

-12-

contract term(s) which it found had been breached and the misrepresentation(s) which it found had been proven. Thus, if it found at least one misrepresentation had not been proven, it could not have awarded the full damage amount under that theory alone. We cannot assume that the jury's answer to Question 3 awarded the full compensatory damages sought for fraudulent misrepresentation.

Because Friedman's breach of contract claim was not correctly submitted to the jury and Question 3 of the verdict form did not differentiate between damages for each of Friedman's two claims, the whole case must be retried. "The rule in this circuit is clear that when one of two theories has erroneously been submitted to the jury, a general verdict cannot stand." Dudley v. Dittmer, 795 F.2d 669, 673 (8th Cir. 1986); see also Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co., 370 U.S. 19, 29–30 (1962); Maryland v. Baldwin, 112 U.S. 490, 493 (1884); What Cheer Coal Co. v. Johnson, 56 F. 810, 813 (8th Cir. 1893). The rationale for this rule is that a verdict (here for compensatory damages) which the jury might have based in whole or in part on an invalidly submitted theory of liability cannot be affirmed. See Sunkist Growers, 370 U.S. at 29–30.

Although a special verdict was employed in this case except for the compensatory damage question, the problem remains. As recognized by the Fifth Circuit in Dougherty v. Continental Oil Co., 579 F.2d 954 (5th Cir. 1978), vacated on joint stipulation of the parties, 591 F.2d 1206 (5th Cir. 1979), "An interrogatory containing multiple issues is really no better than a general verdict. Such an interrogatory presents the same dilemma as a general verdict submitted to the jury on two theories of law, one of which is incorrect." Id. at 960 (citations omitted). The Fourth Circuit dealt with a similar problem in Barber v. Whirlpool Corp., 34 F.3d 1268 (4th Cir. 1994), holding that "[w]hile . . . the verdict form made it clear that the jury found Whirlpool liable for both [the reversed] intentional infliction of emotional distress [claim] and malicious prosecution, the damages award must be vacated [because] [t]he jury awarded a global figure without distinguishing the amount attributable to each claim." Id. at 1278.

-13-

Barber is especially relevant in this case, for here in similar fashion the use of Question 3 on the verdict form makes it impossible to ascertain how much the jury awarded for fraudulent misrepresentation. We cannot assume that the jury awarded the "global figure" of $26,468.36 for fraudulent misrepresentation "without distinguishing the amount attributable to each claim." Id. It would be error to affirm the damage award when the jury could have awarded some of it for the invalidly submitted contract theory.

## IV.

The affirmative defense of a buyer's duty under Iowa law to give seasonable notice of nonconforming goods was properly within the scope of issues to be tried because it was included in the jointly stipulated final pretrial order approved by the court. Omission of the jury instruction on that defense was an abuse of discretion because it deprived McCandless of a legally viable defense that was supported by the evidence.

A new trial for both the contract and fraudulent misrepresentation liability theories is required since the verdict form did not differentiate between damages for each theory. This conclusion renders moot both Friedman's cross appeal from the denial of its bill of costs and the appeal by McCandless and Roloff from the denial of their motion for a new trial or for amendment of the judgment.

For the reasons stated, the judgment of the district court is reversed and the case is remanded to the district court for a new trial.

BYE, Circuit Judge, dissenting.

I disagree with the decision to reverse and remand for a new trial. The instructional error on the breach-of-contract claim did not prejudice McCandless because Friedman also prevailed on the fraudulent misrepresentation claim, and the

-14-

amount of damages on the two alternative theories of recovery was exactly the same. I therefore respectfully dissent.

This case was submitted on two alternative theories of liability – breach of contract and fraudulent misrepresentation. Friedman prevailed on *both* claims. When a party prevails on both of its alternate theories of recovery, it is axiomatic that any instructional error on one claim does not affect its success on the other. Stated another way, a losing party cannot show prejudice due to instructional error on one of two alternate theories of recovery if it also loses on the correctly-instructed claim. See Stockmen's Livestock Mkt., Inc. v. Norwest Bank of Sioux City, 135 F.3d 1236, 1246 (8th Cir. 1998) (rejecting a claimed instructional error involving "virtually identical" claims for common law fraud and deceit because the jury's "separate findings . . . against Norwest on both fraud and deceit . . . negate prejudice"); Stoetzel v. Cont'l Textile Corp. of Am., 768 F.2d 217, 223 n.4 (8th Cir. 1985) (rejecting a claimed instructional error on a fraud claim where "[t]he jury chose to rule for Stoetzel on the alternate ground of breach of contract, and therefore never reached the issue of fraud"); see also Bradshaw v. Freightliner Corp., 937 F.2d 197, 203 (5th Cir. 1991) (rejecting a claimed instructional error on a strict products liability claim because "[t]he jury returned a finding of negligence against [the defendant] which afforded plaintiff an alternate theory of recovery"); Taylor v. Burlington N. R.R. Co., 787 F.2d 1309, 1315 (9th Cir. 1986) (rejecting the defendant's claim the district court erred "by refusing to give an instruction on the doctrine of respondeat superior . . . because the judge instructed the jury on the alternate theory of direct negligence, and the jury found against Burlington anyway").

The Court bases its decision to reverse on the special verdict form used in this case, concluding the interrogatory on damages amounted to a general verdict which allowed the jury to find *different* damage amounts for the breach of contract claim, the fraudulent misrepresentation claim, or some combination of the two claims. The Court focuses on the verdict form's use of the word "or" when

-15-

instructing the jury as to the amount of damages to award: "State the amount of damages Plaintiff sustained as a proximate result of Defendant's breach of contract *or* fraudulent misrepresentation." (Emphasis added). The Court stated: "We cannot assume that the jury awarded the 'global figure' of $26,468.36 for fraudulent misrepresentation 'without distinguishing the amount attributable to each claim.'" Ante at 13 (quoting Barber v. Whirlpool Corp., 34 F.3d 1268, 1278 (4th Cir. 1994)).

In this case, however, we do not have to assume anything about how much the jury was attributing to each claim. The district court, the plaintiff, the defendant, and the jury all *knew* there was no difference in the amount of damages involved for either claim. Friedman asked for exactly $26,468.36 on the breach of contract claim, and exactly $26,468.36 on the fraudulent misrepresentation claim. The jury knew the amount of damages would be the same amount – $26,468.36 – whether it found for Friedman on one claim *or* both claims.

Indeed, McCandless *conceded* this point during closing argument:

It is a simple case and I'll agree with my counsel to that extent. It's a contract case submitted to you on two theories. Contract and fraudulent misrepresentation. The damages are the same under each theory. *There is no difference in damages* and you'll be instructed on that. That $26,000 number I guess that we settle on, that's the number. *Under either – either form of recovery, the damages are the same*.

Trial Transcript at 789 (emphasis added).

To justify its decision, the Court applies the Sunkist Growers rule, which stands for the proposition that a general verdict cannot stand if alternate theories are presented to a jury, and a reviewing court cannot determine whether the verdict is based in whole or in part on an invalidly submitted theory. We do not apply general propositions in the abstract, however, as if in a vacuum. Sunkist Growers

-16-

simply has no application here, because there is no uncertainty – the amount of damages was *identical* for both the contract claim and the fraudulent misrepresentation claim. The Court's claim that it was impossible to ascertain how much the jury awarded for fraudulent misrepresentation has no factual basis whatsoever in this record, evinced by the Court's failure to cite anything in the record for its flawed assumption. This record, in which McCandless conceded the very point at issue (i.e., that the damages were identical on both theories) conclusively shows the jury awarded $26,468.36 for the correctly-instructed fraudulent misrepresentation claim, the same amount it would have awarded even without finding for Friedman on the erroneously-instructed contract claim. In such a situation, McCandless cannot show it was prejudiced by the erroneous instruction, because there was no instructional error on the fraudulent misrepresentation claim and no uncertainty about how much the jury awarded for the fraudulent misrepresentation claim.

The Court suggests the amount awarded for the fraudulent misrepresentation claim was uncertain because the jury *could have* assessed different amounts of damages depending on which of the three alleged misrepresentations it found Friedman proved, and thus *could have* awarded an amount less than the amount Friedman requested on the fraudulent misrepresentation claim. See Ante at 12 n.4. The problem with this argument is that we *know* the jury awarded the full amount requested by Friedman for the fraudulent misrepresentation claim. No uncertainty is inserted into this case merely by raising a hypothetical possibility we can readily determine did not occur.

Moreover, the record shows McCandless never objected to Question 3 on the verdict form and its directive to have the jury state a single amount of damages if it found for Friedman on the breach of contract *or* fraudulent misrepresentation claim. The lack of an objection here makes perfect sense, given the fact that McCandless conceded the amount of damages for both claims was identical. In such a situation, the Sunkist Growers rule simply does not apply. "[I]f the

-17-

complaining party does not object to a general verdict form or request interrogatories, a verdict that encompasses multiple claims of liability may be affirmed as long as there is substantial evidence to support one of the theories presented, irrespective of any reversible errors in other claims submitted to the jury." Davis v. Rennie, 264 F.3d 86, 106 (1st Cir. 2001) (distinguishing the Sunkist Growers rule while describing the Eighth Circuit's holding in Gen. Indus. Corp. v. Hartz Mountain Corp., 810 F.2d 795, 801 (8th Cir. 1987)).  Here, the record supports the jury's decision on the fraudulent misrepresentation claim, and it is certain the jury's damage award was not enhanced in whole or in part by the invalidly submitted contract theory.

I respectfully dissent.

_____